1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    GURJINDER S.,

12                    Petitioner,                    No. 1:26-cv-00188-TLN-CSK

13
14            v.                                     **ORDER**

15    WARDEN OF THE GOLDEN STATE
      ANNEX DETENTION FACILITY, et al.,
16
                      Respondents.
17

18            This matter is before the Court on Petitioner Gurjinder S.'s ("Petitioner") Petition for Writ

19    of Habeas Corpus ("the Petition").[1]  (ECF No. 1.)  Respondents filed a motion to dismiss in

20    opposition to the Petition.  (ECF No. 8.)  Petitioner filed a reply.  (ECF No. 9.)  The parties did

21    not request a hearing.  (ECF Nos. 8, 9.)  For the reasons set forth below, the Petition is

22    GRANTED.

23    ///

24    ///

25

26    _____

27    [1]        Although the Court issued an Order Show Cause as to why a preliminary injunction
      should not issue (ECF No. 6), Respondents requested the Court rule on the merits of the habeas
      petition.  (ECF No. 8 at 2.)  Petitioner did not object.  (ECF No. 10.)  Thus, the Court now
28    considers the merits of the habeas Petition.

                                                    1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Petitioner is a citizen of India and an asylum applicant in the United States.  (ECF No. 1 at 6–7.)  Petitioner entered the United States without inspection on December 31, 2022 and was detained by immigration authorities.  (ECF No. 1 at 6.)  Three days later, he was released on humanitarian parole to pursue his asylum claim.  (*Id*.)  Petitioner's asylum application is still pending.  (*Id*.)

For nearly three years, Petitioner complied with the conditions of his supervised release, including annual check-ins with U.S. Immigration and Customs Enforcement ("ICE").  (*Id.* at 7.)  Petitioner found gainful employment, paid taxes, established a residence, and kept his contact information current with ICE.  (*Id.*)  Petitioner has no criminal history.  (*Id.* at 16.)

On June 19, 2025, Petitioner appeared for a routine ICE check-in, where officers instructed him to return two days later.  (*Id.* at 7.)  On June 21, 2025, Petitioner appeared as instructed to the ICE appointment and was detained by ICE without notice or a hearing.  (*Id.* at 8, 19.)  Instead, he was given notice showing the U.S. Department of Homeland Security ("DHS") instituted removal proceedings against him, without any change in his circumstances.  (*See id.* at 8.)  Petitioner was detained for over six months without an opportunity to be heard as to his detention.  (*Id.* at 8, 19.)

On January 12, 2026, Petitioner challenged the lawfulness of his civil detention through the Petition and filed a Motion for Temporary Restraining Order shortly thereafter. (ECF Nos. 1, 4.)  On January 16, 2026, the Court found Petitioner was likely to succeed on his claim that his detention violated the Fifth Amendment Due Process Clause and ordered Petitioner's release. (ECF No. 6.)  Petitioner was released from detention the same day.  (ECF No. 8 at 2.)  The Court now considers the Petition on the merits.

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

---

[2]    The facts are not disputed.

1   (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in

2   custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

3   release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

4   corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

5   Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has

6   served as a means of reviewing the legality of Executive detention, and it is in that context that its

7   protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a

8   district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v.*

9   *Davis*, 533 U.S. 678, 687 (2001).

10      **III.    ANALYSIS**

11      Petitioner claims his detention violates the Immigration and Nationality Act ("INA") and

12   the Fifth Amendment Due Process Clause.[3]  (ECF No. 1 at 10–23.)  In response, Respondents

13   contend Petitioner is an "applicant for admission" who is subject to mandatory detention under

14   8 U.S.C. § 1225(b)(2).  (ECF No. 8 at 2–3.)  The Court discusses each claim in turn.

15          A.  Violation of the INA

16      Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for

17   arresting and detaining [noncitizens] who are present in the United States and eligible for

18   removal."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a)

19   provides the Government broad discretion whether to release or detain the individual and it

20   provides several layers of review for an initial custody determination.  *Id.*  It also confers "an

21   initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel

22   and to present evidence, the right to appeal, and the right to seek a new hearing when

23   circumstances materially change."  *Id.* at 1202.

24      Conversely, 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") mandates detention during removal

25   proceedings for applicants for admission and does not provide for a bond hearing.

26

27   [3]      Petitioner also claims that his detention is unconstitutionally prolonged.  The Court finds
    it need not address Petitioner's additional claim to rule on the Petition, as this claim seeks the
28   same relief Petitioner seeks in his INA and procedural due process claims.

1    Until the DHS changed its policy in July 2025 ("DHS's July Policy"), the Government

2  consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who

3  were detained by immigration authorities and subject to removal.

4    Courts nationwide, including this one, have overwhelmingly rejected the Government's

5  new legal position and have found DHS's July Policy unlawful. *See Morales-Flores v. Lyons*,

6  No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining

7  this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v.*

8  *Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful

9  DHS July Policy for a nationwide certified class).  Indeed, Respondents acknowledge that the

10  weight of authority is against their position on this issue.  (ECF No. 8 at 3.)

11    Petitioner asserts he was unlawfully detained under § 1225(b)(2) when § 1226(a) should

12  have governed his detention.  (ECF No. 1 at 10–17.)  This Court agrees.  Section 1225(b)(2)

13  applies only to "applicants for admission" "seeking admission" — a category that does not

14  include noncitizens like Petitioner who already entered the United States and was residing here at

15  the time of his re-detention. *See Morales-Flores*, 2025 WL 3552841, at *3.  This Court has made

16  its position on this statutory question clear. *Id.*  Absent new argument, case law, or

17  distinguishable facts, this Court will not reconsider its position.

18    Thus, Petitioner is not an "applicant for admission" subject to mandatory detention under

19  § 1225(b)(2).  Petitioner was instead subject to § 1226(a) and was entitled to the process that

20  statute requires, including a bond hearing at a minimum.  Yet, Respondents did not provide any

21  such hearing to Petitioner in over six months of detention.  Accordingly, the Court finds

22  Respondents violated Petitioner's statutory rights under the INA.

23            B.  Violation of Procedural Due Process

24    The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or

25  property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d

26  976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of

27  the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

28  These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i.  Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released from custody on humanitarian parole in the early days of 2023. (ECF No. 1 at 6.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. For two and a half years, Petitioner asserts he complied with the conditions of his release including attending regular ICE check-ins. (*Id.* at 7.) Indeed, his detention resulted from his compliance with two ICE check-ins

1   within one week.  (*Id.* at 7–8.)  As this Court has found previously, along with many other courts

2   in this district when confronted with similar circumstances, Petitioner has a clear interest in his

3   continued freedom as he awaits the outcome of his immigration proceedings.  *See, e.g.*, *Doe v.*

4   *Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in

5   allowing petitioner to remain in the community for over five years strengthened petitioner's

6   liberty interest).

7                            *ii.  Procedures Required*

8        As to the second step — what procedures or process is due — the Court considers three

9   factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an

10  erroneous deprivation of such interest through the procedures used, and the probable value, if any,

11  of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

12  the function involved and the fiscal and administrative burdens that the additional or substitute

13  procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set

14  forth below, the Court finds Petitioner has established his due process rights were violated.

15       First, Petitioner has a substantial private interest in remaining free from detention.  As

16  discussed above, Petitioner was out of custody for over two and a half years; he built a life as part

17  of his community, paid taxes, and maintained a residence and gainful employment as authorized.

18  (ECF No. 1 at 7.)  Despite his interest in maintaining his liberty, Petitioner was detained for over

19  six months without any notice or opportunity to be heard.  (*Id.*)  Accordingly, this factor weighs

20  in favor of finding Petitioner's private interest has been impacted by his detention.  *See*

21  *Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal.

22  Nov. 20, 2025) (finding similarly).

23       Second, the risk of erroneous deprivation is considerable given Petitioner did not receive

24  any hearing, either pre- or post-detention.  Without any procedural safeguards to determine

25  whether his detention was justifiable, the probative value of additional procedural safeguards is

26  high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

27       Finally, the Government's interest is low, and the effort and cost required to provide

28  Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-

TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner's asylum application is pending and there is no removal order. (*See* ECF No. 1.) Petitioner has no criminal history. (*Id.* at 16.) Additionally, before releasing him on humanitarian parole, early in 2023, immigration authorities would have found that Petitioner was not a danger to the community nor a flight risk. Indeed, Petitioner complied with the conditions of his release and DHS's initial finding has only been strengthened over the years with Petitioner's compliance. (*Id.*) Respondents do not argue otherwise. Therefore, on this record, Respondents had no legitimate interest in detaining Petitioner when they did.

Moreover, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. These are the very processes owed to Petitioner under § 1226(a). It is also less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where Petitioner has substantially complied with the conditions of his release, has no criminal history, and there is no final order of

1    removal — the Court finds pre-deprivation notice and a hearing are possible and valuable to

2    preventing erroneous deprivation of liberty.  Further, Respondents have not provided any

3    substantive opposition to the contrary.  (*See* ECF No. 8.)

4         Respondents did not provide either notice or a pre-deprivation hearing.  Nor did

5    Respondents provide a post-deprivation hearing.  Accordingly, Respondents violated Petitioner's

6    procedural due process rights.

7         Upon finding Petitioner's detention violated the INA and due process, the Court GRANTS

8    the Petition.  (ECF No. 1.)

9    **IV.   CONCLUSION**

10        Accordingly, IT IS HEREBY ORDERED:

11   1. Respondents' Motion to Dismiss (ECF No. 8) is DENIED.

12   2. Petitioner's Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

13   3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining

14      Petitioner absent compliance with constitutional protections, including seven-days' notice

15      and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show

16      material changed circumstances demonstrate a significant likelihood of Petitioner's

17      removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and

18      convincing evidence that Petitioner poses a danger to the community or a flight risk.  At

19      any such hearing, Petitioner shall be allowed to have counsel present.

20   4. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

21        IT IS SO ORDERED.

22   Date: February 9, 2026

23

24                                   _____
                                     TROY L. NUNLEY
25                                   CHIEF UNITED STATES DISTRICT JUDGE

26

27

28

                                         8