UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GURJINDER S.,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-00188-TLN-CSK

**ORDER**

This matter is before the Court on Petitioner's Motion for Attorney's Fees[1] (ECF No. 15) and Respondents' Motion to Hold in Abeyance (ECF No. 18). Respondents filed an opposition to the Motion for Attorney's Fees. (ECF No. 16.) Petitioner filed a reply. (ECF No. 17.) For the reasons set forth below, Petitioner's Motion for Attorney's Fees is GRANTED and Respondents' Motion to Hold in Abeyance is DENIED. (ECF Nos. 15, 18.)

///

///

[1] *See Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 254 n.1 (6th Cir. 1997) (puzzling over whether to "refer to 'attorney fees,' 'attorneys fees,' 'attorney's fees,' or 'attorneys' fees' and settling on "attorney's fees").

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner[2] is a citizen of India and an asylum applicant in the United States. (ECF No. 1 at 6–7.) Petitioner entered the United States without inspection on December 31, 2022, and was detained by immigration authorities. (*Id.* at 6.) Three days later, he was released on humanitarian parole to pursue his asylum claim. (*Id.*) Petitioner's asylum application is still pending. (*Id.*)

For nearly three years, Petitioner complied with the conditions of his supervised release, including annual check-ins with U.S. Immigration and Customs Enforcement ("ICE"). (*Id.* at 7.) Petitioner found gainful employment, paid taxes, established a residence, and kept his contact information current with ICE. (*Id.*) Petitioner has no criminal history. (*Id.* at 16.)

On June 19, 2025, Petitioner appeared for a routine ICE check-in, where officers instructed him to return two days later. (*Id.* at 7.) On June 21, 2025, Petitioner appeared as instructed to the ICE appointment and was detained by ICE without notice or a hearing. (*Id.* at 8, 19.) Instead, he was given notice showing the U.S. Department of Homeland Security ("DHS") instituted removal proceedings against him, without any change in his circumstances. (*See id.* at 8.) Petitioner was detained for over six months without an opportunity to be heard as to his detention. (*Id.* at 8, 19.)

Petitioner filed a petition for writ of habeas corpus on January 12, 2026, arguing that his detention in immigration custody was unlawful. (ECF No. 1.) He filed a motion for temporary restraining order ("TRO") two days later (ECF No. 4), which the Court granted on January 16, 2026, ordering Respondents to release him from custody (ECF No. 6). Respondents filed a motion to dismiss the underlying petition on January 23, 2026, arguing Petitioner is an "applicant for admission" under 8 U.S.C. § 1225(b)(2) while acknowledging "the weight of authority is not in their favor." (ECF No. 8 at 2–3.) The Court rejected this argument and granted the writ of habeas corpus on February 10, 2026. (ECF No. 13.)

Petitioner filed the instant Motion for Attorney's Fees on May 11, 2026, arguing that he is entitled to attorney's fees under the Equal Access to Justice Act ("EAJA"). (ECF No. 15.)

---

[2] These facts were previously set forth verbatim in the Court's Order granting the habeas petition. (ECF No. 13 at 2.)

## II. STANDARD OF LAW

"Under the 'American rule,' litigants ordinarily are required to bear the expenses of their litigation unless a statute or private agreement provides otherwise." *Carbonell v. I.N.S.*, 429 F.3d 894, 897–98 (9th Cir. 2005). Congress has authorized fee recovery by prevailing parties under the EAJA. *Id.* at 898; 28 U.S.C. § 2412(d)(1)(A). The EAJA directs a court to award reasonable fees and expenses to private parties who prevail in civil litigation against the United States if the position of the United States was not "substantially justified" and no "special circumstances make an award unjust." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990).

The EAJA further provides that the "United States shall be liable for such fees and expenses to the same extent that any party would be liable under the common law . . . ." 28 U.S.C. § 2412(b). The common law allows a court to assess attorney's fees against a losing party that has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)). The EAJA's explicit incorporation of the common law in its attorney's fees provision is a clear indication that in all cases Congress intended to hold the government to the same standard of good faith that is demanded of all non-governmental parties. *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008).

Thus, to obtain an award for EAJA attorney's fees and costs: (1) petitioner must be the prevailing party; (2) the government's position must not be substantially justified nor may special circumstances make an award unjust; and (3) the requested attorney's fees and costs must be reasonable. *See* 28 U.S.C. § 2412(d)(1)(A).

## III. ANALYSIS

Courts in this district have held that habeas petitions are civil actions for purposes of fee awards under the EAJA.[3] *See Doe v. Chestnut*, No. 1:25-CV-01372-CDB, 2026 WL 1459808, at

[3] On July 14, 2026, Respondents filed a request to hold this case in abeyance pending the Supreme Court's resolution of *Palacios v. Liggins*, in which the high court granted certiorari on this question. No. 25-1223, 2026 WL 1855057 (U.S. June 29, 2026); (ECF No. 18.) Respondents failed to raise this argument in their initial opposition to the Motion for Attorney's Fees. (ECF No. 16.) Further, the Court disagrees that "Petitioner will not suffer any prejudice if this abeyance motion is granted," and declines to hold the present matter in abeyance. (ECF No.

*2 (E.D. Cal. May 25, 2026) (recognizing disagreement on this question but concluding that "the better interpretation of the term 'any civil action' in the EAJA is that it unambiguously includes habeas proceedings challenging immigration detention"); *Michelin v. Warden*, 169 F.4th 418, 424–25 (3d Cir. 2026) (same); *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (same). The parties do not dispute that Petitioner was the prevailing party in this litigation, or whether he satisfies any other requirement for entitlement to costs under the EAJA.[4] Rather, Respondents argue only that their position was substantially justified. (*See* ECF No. 15 at 4–6; ECF No. 16 at 1 ("This Court should deny the motion because the position of the United States was substantially justified given the unsettled state of the law.").)

Accordingly, the Court considers whether Respondents' position was "substantially justified" as that phrase is understood in the context of the EAJA, before determining whether the requested fees are reasonable.

A. Respondents Have not Met their Burden to Demonstrate their Position was Substantially Justified

"The government bears the burden of demonstrating substantial justification." *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir.2005). A position is substantially justified if it has "a reasonable basis in both law and fact." *United States v. Marolf*, 277 F.3d 1156, 1161 (9th Cir. 2002). "The 'position of the United States' encompasses both an agency's action or failure to act upon which the civil action is based as well as the government's litigation position." *Oregon Nat. Res. Council v. Madigan*, 980 F.2d 1330, 1331–32 (9th Cir. 1992) (internal citations

---

18 at 2); *see Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").

[4] The Motion for Attorney's Fees states that Petitioner submitted a declaration attesting to his net worth attached to the motion, however, it does not appear that the accompanying declarations address this issue. (ECF No. 15 at 15; ECF Nos. 15-1–15-2.) Nevertheless, Respondents do not dispute that Petitioner meets the net worth requirement, and the Court accepts counsel's representation in the signed motion. Fed. R. Civ. P. 11 ("By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support.")

omitted). "Examination of the reasonableness of the government's litigation position encompasses examination of the position on the merits, then focuses upon 'extraneous circumstances bearing upon the reasonableness of the government's decision to take a case to trial.' . . . Extraneous circumstances include relevant legal or factual precedents." *Id.* "[A] position can be justified even though it is not correct." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988).

Petitioner argues separately that Respondents' pre-litigation conduct and litigation position were both unreasonable. (ECF No. 15 at 7–13.) Specifically, Petitioner argues that both Respondents' decision to detain him and their conduct during Petitioner's detention, as well as the legal authority for that detention as advanced before the Court, did not have a reasonable basis in law and fact. (*Id.*)

Respondents argue their position was substantially justified because the question of whether those in Petitioner's circumstances are "applicants for admission" under 8 U.S.C. § 1225 "remains an open question in the Ninth Circuit, but with which, some courts have agreed, including the Fifth Circuit and Eighth Circuit." (ECF No. 16 at 2.) Respondents cite *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); and *Sargsyan v. Bondi*, No. 1:26-cv-259-WBS, 2026 WL 114665, at *1–2 (E.D. Cal. January 15, 2026) for this proposition. (*Id.*) Petitioner stresses in reply that Respondents' position ignored the weight of authority within the Ninth Circuit and failed to address the numerous courts that have rejected their interpretation of the statute. (*See generally* ECF No. 17.)

For the reasons set forth below, the Court agrees with Petitioner that Respondents have failed to carry their burden of demonstrating substantial justification.

*i. Pre-Litigation Conduct*

While attorney's fees should not be awarded under the EAJA "based *solely* upon a finding of bad faith in the conduct underlying the lawsuit," *Ass'n of Flight Attendants v. Horizon Air Industries, Inc.*, 976 F.2d 541, 550 (9th Cir. 1992) (emphasis added), "[t]he district court may consider . . . prelitigation conduct . . . if raised as evidence that the government's conduct before the court was in bad faith or vexatious." *Lu v. United States*, 921 F.3d 850, 864 n.13 (9th Cir.

2019). "Thus, the substantial justification test is comprised of two inquiries, one directed toward the government agency's conduct, and the other toward the government's attorneys' conduct during litigation." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168 (9th Cir. 2019).

The Court finds Respondents' actions in re-detaining Petitioner were undertaken in bad faith and "vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46. Respondents had previously released Petitioner and he had remained at liberty for years before his re-arrest without any allegation that he violated the conditions of his release. (ECF No. 1 at 7.) Indeed, Petitioner was arrested while complying with those conditions. (*Id.* at 8, 19.) Petitioner has no criminal history and has extensive ties to the community. (*Id.* at 7, 16.) Thus, the government had no good faith reason to believe that Petitioner was a danger to the public or a flight risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that because civil immigration detention is "nonpunitive in purpose and effect," it must carry a "special justification," such as "'ensuring the appearance of [noncitizens] at future immigration proceedings' and '[p]reventing danger to the community.'").

Even in the face of a growing chorus of judicial opinions rejecting Respondents' position that non-citizens like Petitioner were subject to mandatory detention, they chose to seize and imprison him without any opportunity to argue for release in front of a neutral decisionmaker. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases rejecting Respondents' argument). This behavior is not only inconsistent with the law as determined by an overwhelming majority of federal courts, but with the concerns about overly broad arrest authority animating the Framers in drafting the Fourth and Fifth Amendments. *See* Thomas Y. Davies, *The Fictional Character of Law-and-Order Originalism: A Case Study of the Distortions and Evasions of Framing-Era Arrest Doctrine in Atwater v. Lago Vista*, 37 WAKE FOREST L. REV. 239, 399 (2002) ("[T]he Framers meant for the Fourth Amendment to reinforce the common-law principle that discretionary arrest or search authority should not be conferred on ordinary peace officers. Indeed, the reason the Framers feared and banned general warrants was precisely because such warrants purported to confer discretionary authority on the officers who held them.").

Immigration detention imposes severe harms on the noncitizen, especially in a context where courts and human rights organizations have found that the conditions of confinement are so substandard as to be punitive. *See, e.g.*, *Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1128–31 (N.D. Cal. 2025) (finding that conditions in ICE detention depriving detainees of sleep, basic hygiene, and medical care were "similar to or worse than pretrial criminal detainees, creating a presumption that the conditions are punitive in nature"); AMNESTY INTERNATIONAL, TORTURE AND ENFORCED DISAPPEARANCES IN THE SUNSHINE STATE: HUMAN RIGHTS VIOLATIONS AT "ALLIGATOR ALCATRAZ" AND KROME IN FLORIDA 57 (2026) ("The cumulative effect of these punitive policies and practices reveals a deliberate strategy that dehumanizes and punishes migrants and people seeking safety, with the aim of deterring them from seeking protection or staying in the country."). That is to say nothing of the harms inflicted on the noncitizen's family and others who depend upon them for financial and emotional support.

Thus, the Court finds that this oppressive pre-litigation conduct is further evidence that the government did not take its litigation position in good faith. *Lu*, 921 F.3d at 864 n.13.

*ii. Litigation Position*

Petitioner highlights the Court's strong language in rejecting Respondents' core legal theory in this litigation. In granting the writ of habeas corpus, the Court cited numerous opinions that ruled against Respondents' position and stated: "Courts nationwide, including this one, have overwhelmingly rejected the Government's new legal position and have found DHS's July Policy unlawful." (ECF No. 13 at 4 (referring to DHS's policy to designate persons like Petitioner as "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)).) Those courts now[5] include the Second, Sixth, and Eleventh Circuits. *Barbosa da Cunha v. Freden*, 175

---

[5] These decisions were issued after Respondents filed their opposition to the habeas petition. However, the opinions of appellate courts issued after the government takes its original position are relevant to the EAJA substantial justification inquiry. *See, e.g.*, *Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1091 (9th Cir. 2022) (considering the position of appellate judges on the majority panel and dissenting judges on the en banc panel in direct appeal of underlying litigation). To the extent post-litigation legal developments are less persuasive in the EAJA analysis, the positive authority cited by Respondents would be proportionally less persuasive as well.

F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). This Court and others in the Eastern District of California have rejected the government's position ad nauseum. *Morales-Flores*, 2025 WL 3552841, at *3 (collecting cases). "Relitigation of a previously decided issue is a strong factor weighing against the government in determining substantial justification." *Save Our Ecosystems v. Clark*, 747 F.2d 1240, 1250 (9th Cir. 1984), *abrogated in part on other grounds by Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531 (1987).

Respondents' sole additional argument in opposition is that the Fifth and Eighth Circuits have since accepted the government's position. *Buenrostro-Mendez*, 166 F.4th 494; *Avila*, 170 F.4th 1128. When the government's legal position divides the federal courts, that factor indeed weighs strongly in favor of substantial justification. *See Medina Tovar*, 41 F.4th at 1091. ("[T]he government's position was found persuasive by no fewer than six federal judges: the district court, two judges on the majority panel, and three dissenting judges on the en banc panel.") (citing *Perez v. Jaddou*, 31 F.4th 267, 271–72 (4th Cir. 2022) ("[I]t is certainly more likely in these circumstances—where no fewer than seven federal judges agreed with the government—that the position of the United States was substantially justified.")).

However, neither *Buenrostro-Mendez* nor *Avila* held that noncitizens detained under 8 U.S.C. § 1225 have no "right to freedom from immigration detention in any form other than the form provided by Congress" or that the Fifth Amendment's Due Process Clause is inapplicable to them. (ECF No. 8 at 3.) The Fifth and Eighth Circuits did not address the constitutional limits of the government's authority to detain non-citizens held under 8 U.S.C. § 1225 at all; rather, they decided that non-citizens who have entered the country without inspection or parole are "applicants for admission" under the terms of the statute. *Buenrostro-Mendez*, 166 F.4th 494; *Avila*, 170 F.4th 1128. Respondents' citation to a single decision in this District which reached a contrary result does not satisfy their burden. *Sargsyan*, 2026 WL 114665.

In their opposition to the habeas petition, Respondents cited *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) as authority for the proposition that these noncitizens lack a protectable liberty interest. (ECF No. 8 at 3.) But they ignored the distinction the Supreme

Court drew in that case between noncitizens at a point of entry and those "who have once passed through our gates, even illegally, [who] may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy*, 345 U.S. at 212. The petitioners in *Shaughnessy* were noncitizens held at Ellis Island because they had been refused entry to the interior of the United States, but whose native countries would not accept them. *Id.* at 207–08. By contrast, Petitioner in the case at bar was arrested after an alleged illegal entry and thus had already "passed through our gates." The Supreme Court, in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020), stated that noncitizens have "only those rights regarding *admission* that Congress has provided by statute" (emphasis added), but the same is not true of due process limitations on the government's authority to detain them. *See Zadvydas*, 533 U.S. 678 (acknowledging serious due process concerns with indefinite immigration detention); *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) (recognizing as-applied due process challenges to immigration detention); *Doe*, 2026 WL 1459808 at *3 ("The most reasonable interpretation of *Preap* is that immigration detainees retain procedural due process rights notwithstanding the operation of a statute providing for a detainee's mandatory detention."); *Barbosa da Cunha*, 175 F.4th at 86 ("While the [entry fiction] doctrine may extend further than the twenty-five yards and twenty-four hours at issue in [*Thuraissigiam*] no one could seriously contend that it applies to a noncitizen like Petitioner who has been living in the United States for decades."). In short, even assuming that Respondents' statutory construction arguments were meritorious (which the Court does not find), those arguments would not have been sufficient to justify Petitioner's detention in the face of his constitutional challenge.

After taking into account Respondents' pre-litigation conduct, litigation position, and favorable and unfavorable legal authority, the Court concludes that Respondents' position did not have a reasonable basis in either law or fact. Therefore, Respondents have failed to meet their burden to demonstrate their position was substantially justified in this case.

B. <u>No Special Circumstances Would Make an Award of Attorney's Fees Unjust</u>

The court should not award attorney's fees in an EAJA case where "special circumstances

make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "The burden of proving the special circumstances . . . exception to the mandatory award of fees under the EAJA rests with the government." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). Examples of special circumstances that have been accepted by the courts include cases that implicate close or novel questions of law, cases where the prevailing party came to the litigation with unclean hands, and cases where the prevailing party did not substantially contribute to the success of the litigation. *See Tri-State Steel Const. Co. v. Herman*, 164 F.3d 973, 979 (6th Cir. 1999); *U.S. Dep't of Lab. v. Rapid Robert's Inc.*, 130 F.3d 345, 348 (8th Cir. 1997).

Respondents make no argument in their two-page opposition that special circumstances apply in this case, and the Court can discern none from the record. (ECF No. 16.)

C. <u>Fee Award</u>

The EAJA permits a prevailing party to recover "reasonable" attorney's fees. 28 U.S.C. 2412(d)(2)(A).

> In determining what a reasonable attorney's fee entails, the district court must apply the hybrid approach adopted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). . . . First, the district court must calculate the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* Next, in rare instances, the court may increase or reduce the presumptively reasonable lodestar fee [taking into account factors] which have not been subsumed in the lodestar.

*United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1991).

The EAJA imposes a statutory maximum on hourly fees, adjusted every year for cost of living, which currently stands at $258.46 per hour for attorneys.[6] *See Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005). The Court may depart from the maximum rate and award enhanced fees if it determines that a "special factor" applies, such as "distinctive knowledge" or "specialized skill" that was necessary to success in the litigation. *Id.* at 876.

Petitioner's counsel submits declarations setting forth the amount of time expended in this case, as well as an itemized list of that time. (ECF No. 15 at 20–22; ECF No. 15-1; ECF No. 15-

---

[6] Statutory Maximum Rates, U.S. Court of Appeals for the Ninth Circuit (July 10, 2026), https://perma.cc/6CWB-6YCL.

2.) The list is divided between work performed by "Lead Counsel," "Associate Counsel," and "Legal Assistant." (ECF No. 15 at 20–22.) According to the list, lead counsel expended 40 hours on the case, associate counsel expended 17 hours on the case and the legal assistant on the matter expended 3 hours, for a total of 60 hours. (*Id.*) Petitioner requests an enhanced hourly rate of $750 per hour for lead counsel, $450 per hour for associate counsel, and $300 per hour for the legal assistant on the matter. (*Id.* at 19.) Respondents have submitted no arguments in response. (ECF No. 16.)

The declarations attached to Petitioner's motion state that one lead counsel in the case has "approximately twenty-one years of experience practicing immigration law" and the other lead counsel in the case has "approximately 16 years experience practicing immigration law." (ECF No. 15-1 at 2; ECF No. 15-2 at 1.) Associate counsel declares that she is entitled to an enhanced hourly rate of $450 per hour "based on [her] experience in immigration and federal litigation matters." (ECF No. 15-1 at 5.) The legal assistant assigned to the matter declares that she "request[s] an hourly rate of $300 per hour for the services provided in this case" based upon her "training, experience, and prevailing market rates for legal-assistant and litigation-support services in the California legal market." (*Id.* at 8.)

Specialized experience in immigration law can be a factor warranting an enhanced rate under the EAJA, particularly when the case involves complex or arcane questions of law and fact. *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004) (recognizing that "immigration laws are complex and their application often requires knowledge of foreign cultures unfamiliar to most Americans"). The Court agrees with Petitioner that federal immigration habeas corpus litigation benefits from specialized knowledge and skill, particularly in a fast-moving legal environment where the contours of the government's authority to detain noncitizens is still being litigated in the federal courts.

However, enhanced fees should only be awarded "in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987). Typically, these fees are awarded only where

counsel has obtained an extraordinary result for their client which is not already reflected in the lodestar calculation. *See, e.g.*, *id.* at 566–68 ("Because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate, the overall quality of performance ordinarily should not be used to adjust the lodestar, thus removing any danger of 'double counting.' . . . . neither the District Court nor the Court of Appeals made detailed findings as to why the lodestar amount was unreasonable, and in particular, as to why the quality of representation was not reflected in the product of the reasonable number of hours times the reasonable hourly rate."); *Hyatt v. Apfel*, 195 F.3d 188 (4th Cir. 1999) (affirming award of 1.333 times multiplier for enhanced EAJA fees in class action lawsuit worth "several hundred million dollars"). Moreover, enhanced fees should only be awarded where counsel's distinctive knowledge was "needful for the litigation in question." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988). As discussed above, the issues in this litigation have been addressed by courts in this district repeatedly, which have overwhelmingly rejected the government's position. Thus, the Court is not persuaded that counsel's specialized skill and knowledge was "needful for the litigation in question." *Id.*

Given that Respondents have offered no arguments in response to Petitioner's fee request, the Court awards the statutory maximum for fees incurred by attorneys on the case and finds the request for an hourly rate of $50 per hour for work performed by the legal assistant assigned to the matter is reasonable. *See Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984) ("We decline to consider petitioner's further argument that the hours charged by respondents' counsel were unreasonable. As noted above, petitioner failed to submit to the District Court any evidence challenging the accuracy and reasonableness of the hours charged . . . ."); *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008) (upholding award of paralegal fees at prevailing market rates).

These sums come to:

| | **Time** | **Rate** | **Total** |
|---|---|---|---|
| **Attorney** | 57 hours | $ 258.46 | $ 14,732.22 |
| **Assistant** | 3 hours | $ 50.00 | $ 150.00 |

| | |
|---|---|
| | **$ 14,882.22** |

## IV. CONCLUSION

For the foregoing reasons, the Motion for Attorney's Fees is GRANTED in the amount of $14,882.22 (ECF No. 15) and Respondents' Motion to Hold in Abeyance is DENIED (ECF No. 18).

IT IS SO ORDERED.

Date: July 21, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE